## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 14-CV-24277-MARTINEZ/GOODMAN

COMPANHIA ENERGETICA
POTIGUAR,

       Plaintiff,

v.

CATERPILLAR INC., CATERPILLAR
AMERICAS SERVICES CO., and
CATERPILLAR AMERICAS CO.,

       Defendants.

_____/

### ORDER CONCERNING DEFENDANTS' MOTION TO STRIKE OLE HAALAND'S DECLARATION SUBMITTED IN OPPOSITION TO A MOTION TO EXCLUDE HIS EXPERT OPINIONS AND TESTIMONY

*"When you are thirsty, it's too late to think of digging the well."*

    -  Japanese Proverb[1]

Can an expert witness successfully submit a post-discovery, post-report declaration in opposition to a *Daubert* motion challenging his opinions (because he purportedly inspected the wrong engine and relied upon the wrong manual) or should it be stricken because it is actually an untimely supplemental expert report purportedly containing new information not previously disclosed in his two earlier expert reports?

---

[1]     http:www.special-dictionary.com/proverbs/source/Japanese_proverb/87503.htm (last visited June 2, 2016).

1

The answer, at least under the unique circumstances of this case (involving almost 150 diesel engines purchased by the predecessor of Plaintiff Companhia Energetica Potiguar ("CEP") and manufactured by Defendants Caterpillar Inc., Caterpillar Americas Services Co., and Caterpillar Americas Co. ("CAT")) is that the motion to strike should be **granted.**

Specifically, CAT filed a Motion to Strike "Declaration of Ole Haaland in Opposition to Caterpillar's Motion to Exclude the Opinions and Testimony of Ole Haaland." [ECF No. 336]. United States District Judge Jose E. Martinez referred CAT's Motion to Strike to the Undersigned. [ECF No. 337]. CEP filed an opposition to CAT's motion to strike [ECF No. 351], and CAT filed a reply [ECF No. 358].

## Magistrate Judge Jurisdiction and Scope of Review

Federal Rule of Civil Procedure 72 fundamentally differentiates between non-dispositive and dispositive matters for purposes of delineating the authority of magistrate judges. If "a pretrial matter [is] not dispositive of a party's claim or defense," then the magistrate judge may enter an order deciding that matter, subject to the requirement that "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. Rule 72(a). By contrast, if a magistrate judge hears, without the parties' consent, "a pretrial matter dispositive of a claim or defense," then the recommended disposition is subject to the limitation that "[t]he district judge must determine de novo

any part of the magistrate judge's disposition that has been properly objected to." Fed.

R. Civ. P. Rule 72(b). Simply put, then, the appropriate standard of review turns on

whether this ruling concerns a dispositive or non-dispositive matter.

Evidentiary rulings, as well as rulings on discovery motions and motions to

amend pleadings, are generally considered non-dispositive. *Allen v. Sybase, Inc.*, 468

F.3d 642, 657 (10th Cir. 2006) (citing with approval district court's finding that a

magistrate judge's evidentiary ruling was non-dispositive); *Pigott v. Sanibel Dev., LLC,*

No. CIV A 07-0083-WS-C, 2008 WL 2937804, at *4 (S.D. Ala., July 23, 2008) (collecting

cases). *See also Villafana v. Auto-Owners Ins.*, No. 06-684, 2007 WL 1810513, at *1 (S.D.

Ala., June 22, 2007) (noting that "the weight of authority" is that a magistrate judge's

ruling excluding plaintiff's expert from testifying is non-dispositive).

As noted by the Court in *Pigott*:

> Case law is abundant for the common-sense proposition that a magistrate
> judge ruling on a nondispositive matter does not somehow mutate into a
> ruling on a dispositive matter simply because that ruling ultimately affects
> the outcome of a claim or defense. *See, e.g., Lithuanian Commerce Corp. v.
> Sara Lee Hosiery*, 179 F.R.D. 450, 456 (D.N.J. 1998) ("I review a magistrate
> judge's evidentiary determinations regarding expert testimony, even
> where they may ultimately affect the outcome of a claim or defense, as
> nondispositive orders entered pursuant to 28 U.S.C. § 636(b)(1)(A).");
> *Jesselson v. Outlet Associates of Williamsburg, Ltd. Partnership*, 784 F. Supp.
> 1223, 1228 (E.D. Va.1991) (magistrate judge's ruling excluding evidence
> that may substantially affect plaintiffs' ability to present their case is
> nondispositive, inasmuch as magistrate did not reach merits of plaintiffs'
> case, but simply made evidentiary rulings without regard to their impact
> on the litigation's outcome); *Melton v. Jewell,* 2006 WL 5175756, *1 n. 1
> (W.D. Tenn. Feb. 17, 2006) (magistrate judge's evidentiary rulings are non-
> dispositive orders, even where they may ultimately affect the outcome of

a claim or defense); *Mosaid Techs. Inc. v. Samsung Elecs. Co.,* 2004 WL
2550309, *2 (D.N.J. Oct. 1, 2004) ("even if a magistrate judge's order has
the potential to materially affect the outcome of an issue, the order should
still be reviewed under the more deferential standard").

2008 WL 2937804, at *4.

Therefore, the mere fact that CAT's motion to exclude Haaland's declaration
might affect a ruling on the *Daubert* motion to exclude Haaland (or CAT's pending
summary judgment motion) does not convert the motion into a dispositive one which I
must resolve through a report and recommendations, as opposed to an order. The
instant motion is not one to exclude Haaland from testifying at trial. It is not the
underlying *Daubert* motion seeking to prevent a jury from hearing Haaland's opinions
at trial. Instead, it is a far-more limited request:  to strike a single-purpose declaration --
to respond to the "you-inspected-the-wrong-product" argument -- filed long after his
two reports were issued. The Undersigned can rule on this relatively narrow
evidentiary issue in an order. *Cf. General Electric Co. v. Joiner,* 118 S. Ct. 517 (1997) (abuse
of discretion standard of review for the admission or exclusion of scientific evidence
does not distinguish between rulings allowing expert testimony and rulings
disallowing it).

**Factual Background**

CEP is a private Brazilian company which supplies electricity to utility
companies serving the public. Its predecessor, Termoletrica Potiguar S/A ("TEP") won

two auctions held by the Brazilian Electricity Regulatory Agency. TEP purchased 144 Caterpillar C32 diesel engine generator sets ("gensets") for more than $13 million. Each set consisted of a diesel engine and a generator.

CEP alleges that these gensets failed to perform and required more maintenance than it expected. It further alleges that CAT knew or should have known from the very beginning that these gensets were unfit for use in CEP's power plants, where they were expected to be used for continuous operation. CEP alleges that the gensets have been plagued with problems, including engines which explode, destroying the engines themselves and causing significant damage to other nearby gensets. CEP alleges that CAT has refused to replace all the gensets and to compensate CEP for its damages.

CEP's Complaint asserts eight counts: for fraud (Count I), negligent misrepresentation (Count II), promissory estoppel (Count III), breach of express warranty (Count IV), breach of implied warranty (Count V), strict product liability (Count VI), Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count VII), and revocation of acceptance (Count VIII). [ECF No. 1].

CAT raises myriad purported defenses to these claims. But one of its principal factual positions is best summarized as follows: CEP did not properly maintain the gensets and chose to hide behind its incorrect understanding of the guidelines in the manual and written limited warranty.

The Court's Amended Scheduling Order established an October 1, 2015 deadline for opening expert reports and a November 9, 2015 deadline for rebuttal reports. [ECF No 177].

The parties engaged in extensive discovery, including multiple trips to Brazil and the hiring of several expert witnesses. CEP retained Haaland as one of its expert witnesses. Haaland submitted an expert report on October 1, 2015 and then served a rebuttal report on November 9, 2015. [ECF No. 336, p. 2]. In his reports, Haaland offered opinions on power plant design, CEP's operation and maintenance practices, and the costs to CEP of operating the gensets.

On **November 9, 2015**, CAT's experts timely submitted their rebuttal reports. One CAT expert, Esteban Arroyave, criticized Haaland's opinions. Among other purported defects noted in his rebuttal report, Arroyave noted that "Mr. Haaland **appears to be confused as to the products at issue** in the litigation." [ECF No. 300-15, p. 5] (emphasis supplied). In reaching this conclusion, Arroyave pointed out that Haaland (1) referenced an incorrect manual -- i.e., one which is not the manual for the G32 gensets, (2) mistakenly called the gensets "power modules," instead of "C32 generator sets," (3) did not include the correct operating manual in the complete and detailed list of documents he considered in connection with the opinions outlined in his reports, and (4) reviewed a manual for a different product. Arroyave also noted that the power modules can be towed to any location for the generation of electrical power while the

6

C32 generator sets are stationary units for generating power. His rebuttal report also references the illustrations for the C32 Power Module and the C32 Gensets, which he concludes are different products.

Another CAT expert, Alan Daniel, also submitted a rebuttal expert report on November 9, 2015. He, too, emphasized that Haaland's reports concerned the "Caterpillar C32 Power Module," not the C32 Generator Sets. Indeed, Daniel's rebuttal report also notes that "the CEP site does not have C32 Power Modules." [ECF No. 300-16, p. 3]. Moreover, Daniel emphasized that Caterpillar's Power Modules are in containers "that are located outside a building and are generally used for the rental market." [ECF No. 300-16, p. 3]. He also explained that, "[d]uring my March 2015 site visit, I observed that CEP has Power Modules outside of its power plants, but none were manufactured by Caterpillar." [ECF No. 300-16, p. 3].

Daniel's rebuttal report contained a photograph of a Caterpillar C32 Power Module and raised the practical point that "[t]he relevant question that Haaland should have addressed [but did not] is whether the failures of the C32 <u>Generator Sets</u> are due to the design and configuration of the power plant and CEP's operational procedures." [ECF No. 300-16, p. 4].

CAT took Haaland's deposition on January 31, 2016. Expert discovery closed on January 29, 2016, but the Court permitted CAT to take the deposition two days after the deadline expired. [ECF No. 230]. Neither CAT nor CEP questioned Haaland at his

deposition about the fact that two of CAT's rebuttal experts had concluded that Haaland inspected the wrong product.

On April 1, 2016, CAT filed its summary judgment motion [ECF No. 303]. On the same day, it also filed its *Daubert*[2] motion to exclude the opinions and testimony of several CEP experts, including Haaland. [ECF No. 300]. The Table of Contents included an argument heading entitled "Haaland's Opinions Are Not Relevant Because He Analyzed The Wrong Product." [ECF No. 300, p. 2]. The argument section of the motion focused on the same point that CAT's experts highlighted in the rebuttal reports disclosed on November 9, 2015 -- that Haaland analyzed Caterpillar C32 Power Modules, which CAT says is a different product than the C32 Gensets at issue in the litigation.

On April 18, 2016, CEP filed its opposition to CAT's motion to exclude several of its experts. [ECF No. 316]. The memorandum's table of contents included a section entitled "Haaland Did Not 'Analyze the Wrong Product,' He Simply Described it With a Different Word." [ECF No. 316, p. 2]. Exhibit 3 to CEP's opposition is a new, eight-page declaration from Haaland, which expressly notes, even in the title, its purpose: to oppose CAT's motion to exclude his opinions and testimony. [ECF No. 316-3]. His supplemental declaration attempts to explain why he believes there is no substantive

---

[2]     *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

difference between the Power Module and the C32 Genset and why no part of his analysis is affected by the description of the equipment as a Power Module.

In other words, this new April 18, 2016 declaration, in effect, addresses the very points which CAT's experts made in their November 9, 2015 rebuttal reports. CEP did not obtain or seek leave to file Haaland's latest declaration.

CAT then filed its motion to strike Haaland's declaration, arguing that it is an "untimely supplemental report" and is nothing more than an "attempted end-run around the Court's Scheduling Order." [ECF No. 336, p. 2]. It notes that the additional information provided in Haaland's supplemental declaration should have been included in his initial reports in the first place or elicited by CEP's counsel during his deposition. CAT contends that allowing Haaland's supplemental declaration would create undue prejudice because it already completed Haaland's depositions, made strategic decisions and filed summary judgment and *Daubert* motions based on his timely expert reports. CAT also argues that the supplemental Haaland declaration is an improper attempt to circumvent the page limitations for *Daubert* opposition briefs because "the declaration directly responds to CAT's *Daubert* motion and extends CEP's argument beyond the four corners of its Opposition." [ECF No. 336, p. 5].

CEP opposes the motion. [ECF No. 351]. It says the April 18, 2016 Haaland declaration is (1) not an impermissible supplemental expert report, (2) did not offer new or changed opinions, or (3) introduce any new exhibits. According to CEP, the

declaration merely provided a permissible direct response to the *Daubert* motion. It also faults **CAT** for spending only 26 minutes asking Haaland deposition questions. It argues that it could not have asked those questions itself even if it wanted to shore up the alleged deficiencies pointed out more than two months earlier (i.e., he allegedly examined the wrong product and read the wrong manual) because it would have been beyond the scope of CAT's very limited direct examination. CEP argues that the declaration should not be stricken for an additional reason:  it provides the very type of information which Haaland would provide if the Court were to have a live, evidentiary *Daubert* hearing, a scenario it notes is still technically possible even now.

In its reply, CAT contends (again) that the declaration does in fact contain new opinions. [ECF No. 358]. It says that CEP improperly attempts to shift blame to CAT for this late supplementation (for its failure to ask the right questions at his deposition). CAT contends that it does not have the burden to develop CEP's record for establishing the foundation for the deposition of CEP's expert, Haaland, and it argues that "expert discovery is not a game of hide-and-seek or wait-and-see." [ECF No. 358, p. 5]. Finally, it says that allowing CEP to submit Haaland's declaration (in which he seeks to explain his misidentification of the correct product and manual) **after** he and CEP read both CAT's *Daubert* and summary judgment motions (and after discovery closed) would be unduly prejudicial.

<u>**Applicable Legal Principles and Analysis**</u>

Federal Rule of Civil Procedure 26(a)(2)(B)(i) provides that a written expert report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." An expert witness has a duty to supplement his or her report "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

Moreover, "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Exclusion is also appropriate pursuant to Rule 16(b), which 'authorizes the district court to control and expedite pretrial discovery through a scheduling order' and which gives the court 'broad discretion to preserve the integrity and purpose of the pretrial order,' including the exclusion of evidence as a means of enforcing the pretrial order." *Buxton v. Lil' Drug Store Prods., Inc.*, No. 2:02-CV-178, 2007 WL 2254492, at *7 (S.D. Miss. Aug. 1, 2007), *aff'd*, 294 F. App'x 92 (5th Cir. 2008) (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990)).

When a party fails to comply with Rule 26, the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation was either justified or harmless. *See* Fed. R. Civ. P. 37(c)(1); *Cooper v. Southern Co.*, 390 F.3d 695, 728

11

(11th Cir. 2004) (explaining that compliance with Rule 26's expert disclosure requirements is "not merely aspirational"), *overruled on other grounds*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006); *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 825 (11th Cir. 2009) (affirming order striking expert for not properly disclosing the scientific bases for his expert opinion in a timely manner); *United States v. Batchelor-Robjohns*, No. 03-201640-CIV, 2015 WL 1761429, at *2 (S.D. Fla. June 3, 2005) (granting motion to strike expert's report and excluding expert from testifying and explaining that "Rule 37(c)(1) requires absolute compliance with Rule 26(a), in that it mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or substantially justified.") (internal quotations omitted).

The burden rests upon the non-producing party (i.e., CEP) to demonstrate that its actions were substantially justified or harmless. *Batchelor-Robjohns*, 2015 WL 1761429, at *2.

Courts have broad discretion to exclude untimely-disclosed expert witness testimony -- even when they are designated as "supplemental" reports. *See Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1252 (11th Cir. 2007) ("a supplemental expert report may be excluded pursuant to Federal Rule of Civil Procedure 37(c) if a party fails to file it prior to the deadline imposed"); *Cook v. Royal Caribbean Cruises*, No. 11-20723, 2012 WL 2319089 (S.D. Fla. June 15, 2012) (refusing to allow supplemental report after discovery cut-off); *Goodbys Creek, LLC v. Arch Ins. Co.*, No. 3:07-cv-947, 2009 WL 1139575, at *2

12

(M.D. Fla. Apr. 27, 2009) ("Rule 26(e) allows supplementation of expert reports *only* where a disclosing party learns that its information is incorrect or incomplete. . . . [A] report that suffers from a major omission cannot be cured by the use of supplementation.") (internal quotations omitted) (emphasis added).

Consequently, a party cannot abuse Rule 26(e) to merely bolster a defective or problematic expert witness report. *Cochran v. The Brinkmann Corp.*, No. 1:08-cv-1790, 2009 WL 4823858, at *5 (N.D. Ga. Dec. 9, 2009) (Rule 26(e) "is not a device to allow a party's expert to engage in additional work, or to annul opinions or offer new ones to perfect a litigating strategy."), *aff'd*, 381 F. App'x 968 (11th Cir. 2010); *Friebel v. Paradise Shores of Bay Cnty., LLC*, No. 5:10-cv-120, 2011 WL 2420230 (N.D. Fla., June 13, 2011), at *2 (supplemental disclosures prohibited "whenever a party wants to bolster or submit additional expert opinions [because it] would reek [sic] havoc in docket control and amount to unlimited expert opinion preparation"); *Jones Creek Investors, LLC v. Columbia Cnty.*, 98 F. Supp. 3d 1279, 1289 (S.D. Ga. 2015) ("[Rule] 26(e) does not permit supplementation to add points that could have been made in the original expert report **or to otherwise shore up weaknesses or inadequacies**, and there is no reason why the new assumptions and methodologies used in the second report could not have been adopted and disclosed in the first during the discovery period.") (emphasis supplied). *See also Goodbys Creek,* at *2 (noting that supplementation of an expert report "does not cover failures of omission because the expert did an inadequate or incomplete

preparation" and using this standard to conclude that the plaintiff could not use the duty of supplementation to add to the expert's opinions).

Therefore, as alluded to in the cases cited above, "[a]n expert's duty to supplement under Rule 26(e), is not a right to **supplement at will."** *Rojas v. Marko Zaninovich, Inc.*, No. 1:09-CV-00705, 2011 WL 4375297, at *6 (E.D. Cal. Sept. 19, 2011) (emphasis added) (noting that supplementation cannot be used to "remedy a deficient expert report" and striking both a supplemental expert report and a declaration for identical reasons: the information was available at the time of the original reports and the expert's lack of preparedness and completeness in his report was a not a proper basis for supplementation).

According to CAT's motion to strike, CEP cannot rely on supplementation "as a way to remedy [Haaland's] deficient expert report." *Veliz v. Cintas Corp.*, No. C 03-1180, 2009 WL 416841, *1 (N.D. Cal. Feb. 19, 2009). Supplementation is not appropriate simply "because the expert did an inadequate or incomplete preparation." *Akeva LLC v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002). Rather, Rule 26(e) "permits supplemental reports only for the narrow purpose of correcting inaccuracies or adding information that was **not available at the time of the initial report**." *Minebea Co., Ltd. v. Papst*, 231 F.R.D. 3, 6 (D.D.C. 2005) (emphasis added) (citing *Keener v. United States*, 181 F.R.D. 639,

14

640 (D. Mont. 1998) (rejecting as "disingenuous" the argument that second expert disclosure was a "supplement" to the initial disclosure)).[3]

Framed by these principles, the Undersigned must decide whether Haaland's declaration is a supplemental report and, if so, whether CEP's position was substantially justified or the failure to disclose it earlier to CAT is harmless.

Despite CEP's protestations to the contrary, I find that Haaland's April 2016 declaration is, for all intents and purposes, a supplemental expert report containing new information not disclosed in his previous two reports. He added his explanation about the purported differences, or lack of differences, between the Power Module and the C32 Genset. This is hardly a minor point. To the contrary, his review of a different product (and a different product manual) is significant enough to cause CAT to file a *Daubert* motion to exclude all of his opinion testimony. In fact, this issue is significant enough to trigger CAT's two experts to flag it in their rebuttal reports last November.

CAT contends that these two products are in fact significantly different, and its *Daubert* motion argues that Haaland's opinions are therefore based on incorrect facts and should be excluded on that basis. Although the Undersigned is not in this Order ruling on the underlying substantive *Daubert* motion, I can certainly conclude now that

---

[3]     *See also Beller v. United States,* 221 F.R.D. 689, 695 (D.N.M. 2003) (striking supplemental report of plaintiff's expert and explaining that initial reports followed by supplemental expert reports would result in a scenario where there would be no finality to experts reports because "each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given").

CAT's argument is far from frivolous. *See Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227, 1232-34 (11th Cir. 2009) (expert opinion should be excluded if the opinion does not have a valid scientific connection to the pertinent inquiry -- because there is "no fit"); *Lewis v. New Prime Inc.*, No. 1:10-cv-1228, 2013 WL 6097568, *3 (N.D. Ga. Nov. 20, 2013) (excluding expert opinion based on average speed where "pertinent inquiry" was speed at time of accident, not average speed).

Haaland's April 2016 declaration contains additional opinions and explanations for his opinions that are the "hallmark of expert evidence," which should have been disclosed in his original reports. *Cooper v. S. Co.*, 390 F.3d 695, 728 (11th Cir. 2004), *overruled in part on other grounds*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457–58 (2006). Perhaps most importantly, he purports to describe the similarities between the C32 Gensets and the Power Modules -- a conclusion which is hotly disputed by CAT's own experts. CAT's experts discussed this point (and their views about why the products were different and why Haaland appeared confused about which product to inspect and analyze) almost half a year earlier, in their November 2015 rebuttal reports.

Haaland could have offered his opinions on the similarities (or lack of significant differences) between the two products (and why the manual from one product could be safely reviewed in lieu of the other product's manual) when he issued his initial report or his rebuttal report. CEP could have arranged for Haaland to have issued a

supplemental report in November, December or January, so that that CAT could have questioned him about it at his January 31, 2016 deposition.

CEP's own attorneys could have questioned Haaland about his opinion about why his inspection of one product was sufficient to justify opinions about the other product during his January 31, 2016 deposition. Had they done so, CAT's attorneys could have followed up with further questions, if they wished to explore those issues further at the deposition.[4]

So Haaland's declaration is an untimely-provided supplemental expert report. CEP did not comply with its disclosure obligations when it waited until after CAT filed its summary judgment and *Daubert* motions to first provide Haaland's sworn explanation in response to the argument that he inspected the wrong product. *See Wannall v. Honeywell Int'l, Inc.*, 292 F.R.D. 26, 35 (D.D.C. 2013) (although the plaintiff may perceive its expert's new opinions to be "necessary" to his case, that "is not a proper reason to supplement an expert report"), *aff'd*, 775 F.3d 425 (D.C. Cir. 2014) (district court did not abuse its discretion in refusing to introduce expert's declaration in response to manufacturer's summary judgment motion); *Thames v. City of Pensacola*, No.

---

[4]     I do not find persuasive CEP's argument that its attorneys would have been **prohibited** from asking those questions after CAT completed its 26 minutes of questioning. CAT would not have been able to instruct the witness to not answer the questions, so the testimony would have existed as of January 31, 2016. Moreover, it is doubtful whether CAT would have even filed a motion to exclude the testimony based on the ground that it would have been beyond the scope of the direct questions at the deposition, especially if CAT had followed up with its own questions.

303-CV-586, 2005 WL 1876175, at *5 (N.D. Fla. Aug. 1, 2005) (striking an expert affidavit filed in opposition to a motion for summary judgment where, after reviewing deposition testimony of another witness in the case, the expert modified his opinion). *See also Friebel,* 2011 WL 2420230, at *2 (striking expert report that "was not a natural extension of the report").

Because I have concluded that Haaland's declaration is a late supplemental expert report, it is permissible only if the delay is substantially justified or harmless. It is neither.

First, it is in response to a position first articulated by CAT's experts on November 9, 2015. CEP was on notice of the issue and the need to provide a supplemental report if it wished to try to clear up an issue which, at least on the surface, appears significant and even potentially fatal to Haaland's ability to offer expert opinions. Haaland's declaration does not adequately explain how the explanations recently provided were not available to him after November 9, 2015. CEP admits that Haaland relied on "information about two CAT products obtained from CAT's own manuals and spec sheets," which were produced before Haaland's initial reports were even served. [ECF No. 351, p. 9]. So there is no substantial justification. *Salgado v. Gen. Motors Corp.,* 150 F.3d 735, 741–43 (7th Cir. 1998) (affirming exclusion of "supplemental" expert testimony based on untimely disclosure because opinions were based on information available prior to the deadline for close of discovery).

Next, it is difficult to discern a logical basis to conclude that the untimely declaration is not harmless. To the contrary, it was filed after the close of discovery, after CAT filed its summary judgment motion, and after CAT filed its *Daubert* motion. CEP had ample time to attempt to cure the problem but it chose to do nothing to address the "wrong product" issue first highlighted on November 9, 2015 until mid-April 2016.

In the classic words of singer/songwriter Carole King, "it's too late, baby now, it's too late."[5] *See also Innis Arden Golf Club v. Pitney Bowes, Inc.*, No. 3:06-CV-1352, 2009 WL 5873112, at *4 (D. Conn. Feb. 23, 2009) (finding "untimely self-serving [expert opinion] supplementation . . . neither substantially justified nor harmless").[6]

CEP argues that the untimely declaration should not be excluded because the Undersigned would hear Haaland's testimony about the wrong product issue if I were to have a live evidentiary hearing on the *Daubert* motion. That argument is not compelling. The Undersigned usually does not hold evidentiary hearings when evaluating the myriad *Daubert* challenges regularly filed in this district.[7] Moreover, even

---

[5]     From the 1971 album, <u>Tapestry</u> (Ode Records).

[6]     The court noted its ruling -- granting defendant's motion to strike plaintiff's supplemental expert witness disclosure -- was a court order containing a substantive ruling on a non-dispositive motion, not a recommendation. *Id.*

[7]     In the instant case, for example, CAT has filed an omnibus *Daubert* motion [ECF No. 300], seeking to exclude the opinions and testimony of 5 CEP experts, while CEP has filed a similar motion [ECF No. 301] against seven CAT experts. Thus, in this one

if I did hold evidentiary hearings from time to time, that procedure is not being used here. Moreover, that argument would create an exception which would swallow the rule. Under CEP's theory, it seems as though no untimely disclosed expert report submitted in response to a *Daubert* challenge would ever be excluded as untimely because the prejudiced party could always question the expert about the new opinion at an evidentiary *Daubert* hearing. Although neither party has raised this odd and illogical result in the briefing, it seems to be the inevitable result of a rule adopting CEP's perspective. But in any event, the Undersigned is not persuaded by this additional argument.

In addition, the Undersigned does not find *Allgood v. General Motors Corp.*, No. 102CV1077, 2006 WL 2669337 (S.D. Ind. 2006) to be compelling enough to change my analysis and reach a different conclusion. In *Allgood*, Defendant General Motors filed a motion to strike two expert witness declarations filed by plaintiffs in response to General Motors' *Daubert* motions, arguing that they were improper efforts to

---

case alone, the Undersigned is confronted with, in effect, **twelve (12)** *Daubert* challenges. This type of expert challenge is not atypical in this district. For instance, in a recent and relatively routine personal injury lawsuit against a cruise ship operator filed by one passenger, *Benner v. NCL (Bahamas) Ltd.*, No. 15-cv-20585-JAL (S.D. Fla.), the parties filed motions challenging *eight* experts [ECF Nos. 57; 58; 59; 60; 64]. Rulings on the motions were made without an evidentiary hearing. [ECF Nos. 114; 149; 151].

As the Eleventh Circuit has explained, evidentiary *Daubert* hearings are not a prerequisite to issuing an admissibility ruling (or a ruling on a motion to strike or exclude) under either the federal rules or established law. *Corwin v. Walt Disney World*, 475 F.3 at 1505, n. 10.

supplement the two experts' original disclosures. The court denied the motion because (1) the experts' original reports were not "unsupported conclusory assertions," (2) the experts' declarations responded to *Daubert* criticisms, and (3) the declarations "harmlessly repeat[ed] information provided in the earlier reports." The district court also concluded that the later submissions did not amount to a "prohibited ambush by an expert." *Id.*, at *5. But Haaland's new declaration does more than simply repeat facts found in his first two reports. In addition, these types of discretionary rulings are largely fact-driven, and I find that this one non-binding, out-of-circuit district court opinion is sufficiently dissimilar on the facts to be comparatively unhelpful to the scenario analyzed here.

Moreover, I do not agree that a supplemental declaration filed in response to a motion challenging the expert is somehow immune from being stricken merely because it was filed in a response to a *Daubert* motion. It is hardly surprising that a party would seek to bolster its expert's opinions after a *Daubert* motion points out significant flaws. So that factor, at least in the Undersigned's view, is hardly controlling. *Cf. Keener*, 181 F.R.D. at 641 (denying motion for leave to file supplemental expert disclosure prepared after expert reviewed opposing party's expert opinions and noting that permitting variations to an expert's disclosure under the guise of supplementation "would be to invite the proverbial fox into the henhouse"). As the *Keener* court explained, a contrary rule would mean that "the experienced expert could simply 'lie in wait' so as to express

his genuine opinions only after [the opposing party] discloses hers". *Id*. The same

concern arises when an expert waits until after a *Daubert* challenge to "supplement" an

opinion in order to address the criticisms of his conclusions.

**Conclusion**

The Undersigned grants CAT's motion to strike Haaland's April 18, 2016

declaration.

This ruling, however, is not an actual substantive ruling on CAT's still-pending

*Daubert* motion, which seeks to exclude Haaland (and other CEP experts) for several

reasons. This ruling will, of course, *affect* the to-be-issued report and recommendations

on the *Daubert* motion because the Undersigned will not be considering Haaland's latest

declaration, which CEP submitted in response to the *Daubert* motion. The Court will

issue a substantive report and recommendations but does not anticipate either oral

argument or an evidentiary hearing on the *Daubert* challenges.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on June 2, 2016.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable Jose E. Martinez
All Counsel of Record