## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA


### CASE NO. 14-CV-24277-MARTINEZ-GOODMAN

**COMPANHIA ENERGETICA POTIGUAR,**

        **Plaintiff,**

    **vs.**

**CATERPILLAR INC., CATERPILLAR
AMERICAS SERVICES CO., and
CATERPILLAR AMERICAS CO.,**

        **Defendants.**

_____


**DEFENDANTS' OBJECTION TO JUNE 13, 2016 REPORT AND
RECOMMENDATIONS ON DEFENDANTS' MOTION SEEKING TO EXCLUDE
<u>HENRY FUENTES' OPINIONS AND TESTIMONY (DKT. NO. 371)</u>**

## **TABLE OF CONTENTS**

I.    BACKGROUND ........................................................................................................... 1

II.   LEGAL STANDARD .................................................................................................. 2

III.  CATERPILLAR'S OBJECTIONS TO THE JUNE 13, 2016 REPORT AND
      RECOMMENDATIONS .............................................................................................. 3

      A.   The Judge Erred In Finding Fuentes' Report Satisfied Rule 26 ............................ 3

           1.   Caterpillar's Decision Not To Take A Second Deposition Of Fuentes
                Pending Resolution of Caterpillar's Objection To Judge Goodman's
                Orders Is Not Relevant To Caterpillar's Motion To Exclude .................... 4

           2.   The R&R Incorrectly Concluded That Caterpillar's Experts Did Not
                Cite Supporting Evidence ..................................................................... 5

           3.   Caterpillar Identified The Flaws In Fuentes' Report Long Before His
                Deposition .......................................................................................... 6

           4.   Cross-Examination At Trial Does Not Cure Rule 26 Failures ................. 8

           5.   Caterpillar's Cases Support Excluding Fuentes' Testimony ................... 10

           6.   Excluding Fuentes' Testimony Is Not "An Unduly Harsh, Draconian
                Sanction" .......................................................................................... 12

      B.   Judge Goodman Erred In Finding Fuentes' Report Admissible .......................... 14

           1.   The R&R Improperly Abdicates The Court's Gatekeeping Role ........... 14

           2.   The Court Relied On Out-of-Circuit Cases And Improperly Rejected
                Binding Case Law .............................................................................. 16

           3.   The R&R Did Not Acknowledge Caterpillar's Arguments ................... 17

Pursuant to Federal Rule of Civil Procedure 72(b), 28 U.S.C. § 636(b)(1), and Local Magistrate Judge Rule 4(b), Caterpillar objects to the Report and Recommendations on Defendants' Motion Seeking to Exclude Henry Fuentes' Opinions and Testimony (hereinafter "R&R," Dkt. No. 371) filed June 13, 2016.

## I.    BACKGROUND

This case involves allegations that CEP purchased 144 generator sets ("Gensets") from Caterpillar that are allegedly defective.   During discovery, CEP served an Analysis of the Economic Damages of Companhia Energetica Potiguar, authored by Henry Fuentes and a colleague, Patrick Gaughan (hereinafter "Fuentes Report" or "Fuentes Rep.").   CEP later confirmed that only Fuentes would testify at trial.[1]  Fuentes offered opinions that contain not a single cite to facts or data to support any of his supposed damages calculations.[2]  Instead, he cites a general catch-all on his documents reviewed list that encompasses more than 30,000 pages of documents produced by CEP and Caterpillar.  (Ex. 1, Fuentes Rep., App. F, Nos. 4-16.)

During his deposition Fuentes admitted that almost the entirety of his report was without citation.  (*See, e.g.*, Ex. 2, Fuentes Depo. at 34-35; *see also id*. at 18, 33, 36, 42, 48, 62-63, 66, 78, 97, 110-11, 135, 144, 146, 147-48, 150, 160-63, 172, 180-82, 191-93, 199, 202, 205.) Further, Fuentes could not point Caterpillar to the specific documents that supported his assertions within the thousands of pages he listed.  (*See, e.g., id*. at 67:8-68:1 (Q. Are you saying that the invoices are to be found somewhere in this list of documents that you relied upon? A. Yes, I believe so. Q. But you didn't cite where in this 30,000-some-odd pages one could find

---

[1] In Caterpillar's Motion to Exclude, the co-authored report was treated as Fuentes' report and the opinions contained therein were treated as Fuentes' opinions given that CEP confirmed that the report contained the opinions of both Fuentes and Gaughan, but only Fuentes would testify. The same nomenclature is used in this Objection.

[2]  Fuentes cites to a handful of deposition transcripts in his background sections for facts such as identifying Plaintiff's CEO and holding company.  (*See, e.g*., Ex. 1, Fuentes Rep. at 3 n.1-2.)

them, right? A. That's true.), 97:1-97:5 (Q. And there – but there are no citations to documents in your report, right? A. Other than the listing of the thousands of documents in the back.) (objections omitted).)

Thereafter, Fuentes provided a six-page errata sheet to his deposition.  (Ex. 3, Fuentes Errata.)  The errata contained string cites of bates numbers of thousands of documents that Fuentes supposedly relied on to reach certain opinions in his report.  However, *none* of the documents listed on the errata were cited in the body of Fuentes' report or referenced during Fuentes' deposition.  Moreover, many of the documents identified on the errata were not listed in Fuentes' materials relied upon (highlighted in blue on Exhibit 3), and *some were not even produced until months after CEP served Fuentes' report*.  Caterpillar moved to strike the errata. (Dkt. No. 286, 306.)  Judge Goodman denied the motion and held that Caterpillar could take an additional deposition of Fuentes.  (Dkt. Nos. 308, 313.)  Caterpillar filed an objection to these Orders, which is currently pending before this Court.  (Dkt. No. 331.)

Caterpillar moved to exclude Fuentes for failing to comply with the requirements of Federal Rule of Civil Procedure 26(a)(2)(B)(ii) and as unreliable under Federal Rule of Evidence 702 and *Daubert*.  (Dkt. No. 300.)  The motion was referred to Judge Goodman for a recommendation on April 13, 2016 (Dkt. No. 312). Judge Goodman recommended the district court deny the motion on June 13, 2016.[3]  Caterpillar now objects.

## II.    LEGAL STANDARD

In reviewing a magistrate judge's report and recommendation, the district court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  The Court therefore must

---

[3]  Caterpillar filed an omnibus *Daubert* motion, asking the Court to exclude all five of CEP's experts.  Judge Goodman's June 13 R&R only relates to Caterpillar's arguments regarding Fuentes.

conduct a *de novo* review if a party files a proper, specific objection to a factual finding contained in the report and recommendation. *See Henning v. Walmart Stores Inc.*, 2016 U.S. Dist. LEXIS 59872 (M.D. Fla. Apr. 27, 2016) (internal citations omitted); *Nolley v. Bryson*, 2016 U.S. Dist. LEXIS 12594 (N.D. Ga. Jan. 5, 2016). Legal conclusions are subject to *de novo* review even if no party specifically objects. *United States v. Keel*, 164 F. App'x 958, 961 (11th Cir. 2006). *De novo* review "require[s] independent consideration of factual issues based on the record." *Jeffrey S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 513 (11th Cir. 1990) (per curiam). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3).

## III.   CATERPILLAR'S OBJECTIONS TO THE JUNE 13, 2016 REPORT AND RECOMMENDATIONS

Caterpillar moved to strike Fuentes' report for failing to comply with the requirements of Federal Rule of Civil Procedure 26 and to exclude his report as unreliable and unhelpful under Federal Rule of Evidence 702 and *Daubert*. Specifically, Caterpillar moved on the basis that Fuentes failed to identify the "facts or data considered by the witness in forming" his opinions. Fed. R. Civ. P. 26(a)(2)(B)(ii).  Caterpillar also moved on the grounds that Fuentes: (1) regurgitated CEP-created analyses without verification, (2) relied on speculative data, (3) applied an unsupportable discount rate, and (4) failed to consider components of a valid damages analysis.  Caterpillar objects to Judge Goodman's recommendation that the Court deny Caterpillar's motion in its entirety because the recommendation misapplies the law and does not properly consider the egregious facts surrounding Fuentes' opinions.

### A.   The Judge Erred In Finding Fuentes' Report Satisfied Rule 26

Judge Goodman reached two alternate conclusions regarding Caterpillar's Rule 26 arguments.  First, he concluded that "Fuentes' report does not violate Rule 26's disclosure requirements when it failed to specify the particular pages he considered from the categories on

the list and did not connect back the opinions and analysis to specific pages.  (R&R at 23.)

Second, he concluded that even if Fuentes violated Rule 26, "the extreme relief requested" is not

"justif[ied]."  (*Id.*)  Caterpillar objects to both of these conclusions as both incorrect legally and

factually.

> **1.    Caterpillar's Decision Not To Take A Second Deposition Of Fuentes
> Pending Resolution of Caterpillar's Objection To Judge Goodman's
> Orders Is Not Relevant To Caterpillar's Motion To Exclude**

The R&R repeatedly excuses Fuentes' failure to cite any evidence on the basis that "CAT

could have ameliorated prejudice flowing from the report's failure to provide that level of

specificity by taking Fuentes' deposition a second time…."  (R&R at 24-25; *see also id*. at 15-

16, 26-27.)  Judge Goodman's Orders relating to the errata issue and permitting Caterpillar to

take another deposition of Fuentes are independent from Caterpillar's motion to exclude.

Moreover, the R&R's repeated reference to the deposition, or lack thereof, misdirects the merits

of Caterpillar's motion to exclude and confuses the issues.  The lack of support provided with

Fuentes' opinions cannot and should not be permitted to be cured by taking additional

depositions. Rule 26 requires experts to provide the basis for their opinions ***in their report*** and

not months later as part of an errata or subsequently ordered deposition after the close of

discovery.  Rule 26 does not permit an expert to submit an incomplete, deficient report in the

first instance and then rely on procedural gamesmanship to fill in the gaps.  Thus, the R&R's

reliance on additional deposition time as a cure for a Rule 26 violation is incorrect.

In the interest of brevity, Caterpillar will not fully rehash the arguments in its pending

Objection (Dkt. No. 331) to the Orders regarding Fuentes' errata and the second deposition.  But,

in short, Caterpillar objected to the Orders because the "errata," was an untimely supplemental

expert report that attempted to add cites to thousands of pages of documents to Fuentes' report.

Caterpillar also moved to stay the "relief" – another deposition of Fuentes – afforded by Judge

Goodman until the Court ruled on the Objection.  Another deposition prejudices Caterpillar because it will give Fuentes another opportunity to supplement his opinions (with the advantage of having reviewed Caterpillar's *Daubert* and summary judgment arguments) while Caterpillar's expert is prohibited from responding.[4]

A second deposition also gives CEP the chance to clean up the record and bolster its positions, while Caterpillar is prohibited from responding.  This can hardly be characterized as equitable relief, nor should it excuse Fuentes' plain violations of Rule 26.  Moreover, moving forward with the deposition is inefficient and wasteful of resources.  If this Court sustains Caterpillar's Objection, the deposition will be unnecessary and a waste of the time and money of both parties and the expert.

>    **2.      The R&R Incorrectly Concluded That Caterpillar's Experts Did Not Cite Supporting Evidence**

Judge Goodman recommended denying Caterpillar's motion on the grounds that "it seems as though some of CAT's *own* experts did not specifically correlate their own opinions with particular materials or data."  (R&R at 24 (focusing on Caterpillar expert Michael Minks) (emphasis in original).)  To support this conclusion, the R&R does not rely on specific pages of Mr. Minks' report.  Instead, the R&R incorrectly relies on **assertions** in **CEP's *Daubert* motion** supposedly addressing Mr. Minks' report.  (*Id.*)

This conclusion is both factually and legally wrong.  First, even a cursory review of Minks' report reveals that his report contains cites to bates numbered documents throughout the report.  (Ex. 4, Minks Report.)  For example, these paragraphs on page 45 of Minks' report include citations to bates numbered pages:

---

[4]   In fact, Caterpillar immediately moved to stay the Order and deposition.  (Dkt. No. 311.) Judge Goodman denied the motion (Dkt. No. 313), and Caterpillar filed its Objection thereafter.

> 95.    The original engine, SYC02774, failed on November 29, 2012.  A replacement engine, SYC05910, was installed on December 4, 2013.  That replacement engine failed on April 3, 2014.  (CAT010700, Email from Nate Rasmussen.)
>
> 96.    SYC02774 experienced failed rod bearings after 700 hours of operation following replacement of the piston packs in the engines at CEP.  (CAT000942, Piston Pack Service Letter.) The local Caterpillar dealer, Marcosa, conducted an Applied Failure Analysis (AFA) and concluded that the failure was due to connecting rod bolt failure as a result of plastic deformation.  (CAT010471.)  Based on the photographs provided of the bearings, I deemed that this conclusion as to cause was incorrect.  (CAT057472 – CAT0574, Service Claim User Worksheets; CAT058106 – CAT058107, Service Claim User Worksheets.)  A rod bolt failure will result in a "chomped" bearing with little to no discoloration.  These bearings, in contrast, were extremely discolored and showed signs of smearing (adhesive wear).  In my experience, discolored bearings this soon after a major intervention is a result of built-in debris or oil contamination.  The appearance of the rod bolt showing plastic deformation is a result of excessive clearances due to the loss of the rod bearing and overloading the rod bolt.  The most

CEP's statements to the contrary do not make it so.

Second, "Caterpillar did it too" is not a reason to deny Caterpillar's motion to exclude. Rather, if CEP actually thought "Caterpillar did it too," CEP should have moved under Rule 37 to strike Caterpillar's experts' reports for failing to comply with Rule 26. CEP did not (and the excerpt above from Mr. Minks' report shows why they did not). Although Judge Goodman apparently accepts as true CEP's atmospherics that "Caterpillar did it too," even if it were true, it is irrelevant to determining whether to exclude Fuentes.

### 3.    Caterpillar Identified The Flaws In Fuentes' Report Long Before His Deposition

The R&R blames Caterpillar for Fuentes' failure to cite supporting documents on the basis that Caterpillar failed to "flag and seek to cure its concern over Fuentes' failure to cross-reference the specific pages in the materials he relied upon…**before** it took his deposition." (R&R at 24 (emphasis in original).)   The Court's support for this conclusion is that "[a]pparently, CAT never asked CEP to provide a more-detailed breakdown of the materials in the nearly four months it had to prepare for his deposition."   (*Id.* at 25 n.9.) Again, these

conclusions are factually and legally wrong.

Caterpillar raised its concern twelve weeks before Fuentes' deposition. Caterpillar's damages expert, Reza Nikain, stated no less than six times in his November 9, 2015 report that Fuentes' report was unsupported:

- Unavailability and therefore damages stemming from meeting the power demand requirements *are not supported by documentation*, and *Economatrix's findings are unsupported*. (Ex. 5, Nikain Rep. at 2 (emphasis added); *see also* complete Nikain Report, Docket No. 301 (Exhibit 31).)

- It is to be noted that this is the sole support that Economatrix offers for this element of the claimed damages. Review of Economatrix's Appendix F, "Documents Reviewed and Relied Upon," reveals that *the backup is insufficient and lacks even the basic supporting documentation*, such as Cummins equipment purchase invoices, or any other support for the alleged incurred costs such as freight, import duties and taxes, electrical and mechanical costs, and commissioning. (*Id.* at 15 (emphasis added).)

- As an example of the *gaps in support*, we reference the original Complaint dated November 12, 2014 and refer to paragraph 140 (page 28) wherein it is stated that CEP procured 50 Cummins engines at a total cost of US$9,750,000 FOB (Freight on Board), equating to US$195,000 each. In Economatrix's Exhibit 4, it is observed that this line item has increased to US$14,651,062. Economatrix provides no explanation or support of this 50% variance. *Notwithstanding the lack of supporting documents from Economatrix*…. (*Id.* (emphasis added).)

- Notwithstanding the impediments to providing a complete valuation posed by the *absence of supporting documentation*, this section will discuss Navigant's valuation approach once the appropriate information becomes available. (*Id.* at 18 (emphasis added).)

- It is to be noted that the sole support that Economatrix offers for this element of the damages claim is Exhibit 7. Review of the Economatrix Appendix F, "Documents Reviewed and Relied Upon," *reveals that these do not identify any invoice* associated with any of the three vendors identified (Aggreko, GenRent, and Tecnogera). (*Id.* at 27 (emphasis added).)

- This appears to be the sole support that Economatrix offers for this element of the damages. Review of the Economatrix Appendix F "Documents Reviewed and Relied Upon" reveals that *these do not identify any invoice* associated with lubricant oil purchase to allow validation of either volume or price. (*Id.* at 39 (emphasis added).)

Thus, CEP was on notice months prior to Fuentes' deposition that his report was woefully under-

cited and unsupported.

Because the R&R overlooked the notice provided by Caterpillar, the R&R's legal analysis is flawed.  Judge Goodman relies on two cases to support his conclusion that Caterpillar is somehow barred from making Rule 26 arguments because it "did not flag and seek to cure its concern over Fuentes' failure to cross-reference the specific pages...."  (R&R at 24-26 (citing *Griffith v. Gen. Motors Corp.*, 303 F.3d 1276, 1283 (11th Cir. 2002); *Thornton v. United States*, No. 111-106, 2013 U.S. Dist. LEXIS 15543, at *23-24 (S.D. Ga. Feb. 5, 2013)).)  These cases are inapplicable.  In both *Griffith* and *Thornton*, the party moving to exclude an expert report never raised the issue during discovery.  Here, as described above, CEP was on notice in November 2015 – or more than two months prior to the expiration of discovery and five months prior to Caterpillar filing its motion to exclude – that Fuentes' report failed to comply with Rule 26's citation requirements.

### 4.      Cross-Examination At Trial Does Not Cure Rule 26 Failures

Judge Goodman stated that "CAT can certainly cross-examine Fuentes about his report's failures at trial and argue to the jury that his opinions should not be accepted because he did not timely lists the specific materials and correlate them to his conclusions in his report."  (R&R at 24.)  But waiting until trial to address the lack of support in Fuentes' report pushes off and avoids the Court's gatekeeping role of ensuring that the trier of fact is presented with supported opinions and not misled by passionate groundless conclusions. *See McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002) ("*Daubert* requires that trial courts act as "gatekeepers" to ensure that speculative, unreliable expert testimony does not reach the jury."); *Hughes v. Kia Motors Corp.*, 766 F.3d 1317, 1328-29 (11th Cir. 2014) (same).  The purpose of Rule 26's requirements is to allow the opposing party to prepare for the cross-examination of the expert.  *See Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008) (noting

the expert disclosure requirements of Rule 26 are designed "to provide opposing parties reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses") (internal quotations omitted).   Thus, Judge Goodman concluded that the prejudice caused to Caterpillar in preparing to cross-examine Fuentes can be resolved by cross-examining Fuentes.  This is circular and contrary to the purpose of Rule 26's requirements.

Further, Caterpillar did cross-examine Fuentes about his report's failures during his deposition – and he failed to identify any supporting evidence:

> Q. And then it says, "However, starting in October 2012, ONS requested full power which meant that CEP had to respond and provide the contracted amount of power continuously," right?
> A. Yes.
> Q. And there's no citation for that proposition either, correct?
> A: There is no citation there, no.
> * * *
> Q. All right. So at this point you write above, "CEP was unable to provide the necessary level of support," and there is no citation there to support that proposition, right?
> A. Other than they were not able to provide that.
> Q. Well, my question, though, isn't whether you think they were unable to provide it. My question is: There is no citation there to support that proposition?
> A. No specific citation.
> * * *
> Q. And there is no citation supporting that statement of fact, correct?
> A. There is not.
> Q. Okay. For example, you do not cite a document from ONS where it says to CEP we have reduced the requested power from you to slightly below your total capacity, no document cited that says that, right?
> A. That's correct.
> * * *
> Q. And I'll note and this will come up again when we look at Exhibit 2, that with respect to the costs that were compiled, there are no citations to documents that you reviewed to support what you've written on page – top of page 14, correct?
> A. There is no specific citations.
> Q. So just for example, if I wanted to look at the cost of diesel fuel, which is your number one cost on page 14, and then it is going to appear again, right, on Exhibit 2, or in Exhibit 2, there are no citations to the invoices that you added up such that I could replicate it, right?

9

A. Well, I believe those are probably listed in the documents in the back, okay, which were then reorganized by category. And there you would find the cost of the diesel fuel, it varied – well, it varied a little bit, okay. Some months were the same, and then that would have to be multiplied by the volume of fuel that they would use.
Q. Are you saying that the invoices are to be found somewhere in this list of documents that you relied upon?
A. Yes, I believe so.
Q. But you didn't cite where in this 30,000-some-odd pages one could find them, right?
A. That's true.

(*See, e.g.*, Ex. 2, Fuentes Depo. at 18:1-9, 33:14-24, 42:2-11, 66:12-68:1 (objections omitted).)

In addition, the Court applied the wrong standard and thus committed legal error. The R&R cites *Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc.*, 615 F.3d 1352 (11th Cir. 2010), a case in which the court held that the appellant could "challenge – on cross-examination and on rebuttal – the *reliability* of the revenue projections and data on which [expert] grounded his opinions...." *Id.* at 1364 (emphasis added). Here, Judge Goodman relied on this case not for a reliability challenge, but rather a Rule 37 motion to strike for failing to comply with Rule 26.

The appropriate standard to apply when determining whether to strike a non-compliant report is whether the failure is substantially justified or harmless. *See* Fed. R. Civ. P. 37(c)(1); *Cooper v. Southern Co.*, 390 F.3d 695, 728 (11th Cir. 2004) (explaining that exclusion is automatic unless the failure is substantially justified or harmless), *overruled on other grounds*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006). As Caterpillar explained in its motion, Fuentes' Rule 26 failures are neither justified nor harmless. CEP failed in opposition to explain why Fuentes' failure to cite supporting evidence is substantially justified or harmless; therefore the motion to strike should be granted.

## 5. Caterpillar's Cases Support Excluding Fuentes' Testimony

The R&R includes further factual and legal error in that it summarily concludes that Caterpillar's cited cases involved Rule 26 violations that "were more problematic" than the issues in this case. (R&R at 23.) Judge Goodman asserts that Fuentes' report "is light years

10

away from the types of skeletal, barebones, wholly conclusory expert opinions involved in the cases cited by CAT." (*Id*. at 21.)  This is incorrect.

The R&R distinguishes *Goodbys Creek* as a case where the "expert's report was brief, consisted primarily of legal conclusions and attempted to meet Rule 26 requirements with one sentence – 'opinions will be based on the documents provided, as well as his 38 years' experience.'" (R&R at 23.)  Likewise, Judge Goodman contrasts "Fuentes' 42-page report is comprehensive, comparatively detailed and accompanied by a list of documents and materials he reviewed...." (*Id* at 21) with *Ciomber* as "disclosure of facts or data by expert who provided only eight terse statements concluding that defendant was responsible was only a mere reference to 'various deposition transcripts and corresponding exhibits.'" (*Id* at 23.)

While true that Fuentes' report is 42 pages in length and accompanied by a list of materials reviewed, it is not comprehensive and detailed.  The analysis portion of Fuentes' report contains no citations to documents or data, and his materials list contains ranges of more than 30,000 pages of documents.  Simply because a report has many pages associated with it does not mean that it properly discloses the opinions and underlying support.  The inquiry is whether Fuentes included the facts or data supporting his report as required by Rule 26.

There is no denying that Fuentes' report contains a lot of numbers, but there is no support for the numbers.  Conjuring numbers from thin air does not satisfy Rule 26.  *United States v. Twenty-Nine Pre-Columbian & Colonial Artifacts from Peru*, 2015 WL 457860, at *2 (S.D. Fla. Feb. 3, 2015); *see also Mitchell v. Ford Motor Co.*, 318 Fed. App'x 821, 824-25 (11th Cir. 2009) (affirming district court's decision to strike expert's report for failing to disclose the bases of his report); *Romero v. Drummond Co.*, 552 F.3d 1303, 1323 (11th Cir. 2008) (affirming trial court's exclusion of expert report that "merely recite[s] the general subject matter of their expected

testimony"); *Reese*, 527 F.3d at 1266 (affirming district court's exclusion of expert affidavit for failing to comply with Rule 26(a)); *United States v. Batchelor-Robjohns*, 2005 WL 1761429, at *4 (S.D. Fla. June 3, 2005) (prohibiting expert from testifying at trial where party refused to disclose expert's calculation models); *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 282 F.R.D. 655, 663-65 (M.D. Fla. 2012) (excluding "woefully deficient" expert report where expert failed to disclose the bases of his opinions); *Harrison Bros. Dry Dock & Repair Yard, Inc. v. Pan Agri Int'l, Inc.*, 2009 WL 3273926, at *4 (S.D. Ala. Oct. 9, 2009) (holding report violates Rule 26 where expert "offer[ed] no basis or reasons" for his opinions).

**6.      Excluding Fuentes' Testimony Is Not "An Unduly Harsh, Draconian Sanction"**

At close, Judge Goodman refused to strike Fuentes's report because it was an "unduly harsh, draconian sanction." (R&R at 26.) The Court again emphasized Caterpillar's "failure to take a second deposition of Fuentes" as a basis for denying Caterpillar's request. For the reasons previously addressed, this alleged "failure" is irrelevant to Caterpillar's motion. *See* Section III.A.1, *supra*. Further, striking the report is not "unduly harsh, draconian sanction," but is the automatic remedy. As acknowledged by Judge Goodman in the legal standard portion of the R&R, Rule 37 provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party *is not allowed to use that information or witness* to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) (emphasis added). However, the R&R fails to explain how CEP's failure is "substantially justified or harmless" (which is not surprising given that CEP made no attempt to show why Fuentes' failures should be excused).

The cases relied on in the R&R to support Judge Goodman's conclusion are inapposite. First, in *McClain v. Metabolife Int'l, Inc.*, the court held as follows:

> The deficiencies in [plaintiffs' expert's] Reports **were harmless.** Defendant has actually deposed [plaintiffs' expert], and is not now arguing that it was caught in some sort of "ambush." The Court recognizes that merely having to depose a party on information that should have been disclosed in a Rule 26 Report is a form of prejudice. However, ***it does not appear that Plaintiffs' [sic] were attempting to "hide the ball" in any way***. Without a finding of bad faith or gamesmanship on the eve of trial, many courts are loathe to invoke the strong medicine of precluding expert testimony. The Court also is persuaded by the fact that Plaintiff supplemented [plaintiffs' expert's] Reports, and ***Defendant has not argued that such supplements are deceitful, but merely that they are not timely***. The Court concludes that Defendant has suffered no prejudice and therefore that the failings in [plaintiff's expert's] Reports were "harmless."

193 F. Supp. 2d 1252, 1259 (N.D. Ala. 2002) (emphasis added).  Here, unlike the defendant in *McClain*, Caterpillar is, in fact, arguing it could be "caught in some sort of 'ambush.'"[5]  When Caterpillar moved to strike Fuentes' report, Caterpillar explained how Fuentes failed to identify any supporting documents in his report, and worse, could not identify any documents during his deposition.   Caterpillar warned of the prejudice this would cause: "At trial, Caterpillar will be unfairly prejudiced with surprise testimony of CEP's experts if they disclose specific evidence.  This is the exact ***ambush*** situation Rule 26 is intended to prevent."   (*Daubert* Mot. at 6-7 (emphasis added).)  Moreover, CEP plainly has been attempting to hide the ball.  This is evident by Fuentes' so-called errata which lists both documents that were not listed on Fuentes' materials list and documents that were not produced at the time of his report.

Second, the expert report at issue in *Spottswood v. Stewart Title Guar. Co*. was inadvertently served late, but with more than six weeks remaining in discovery.  2010 U.S. Dist. LEXIS 144572 (S.D. Ala. Oct. 14, 2010).  The court reasoned that there was no prejudice to the defendant given that discovery was still on-going.  *Id.* at *4-5.  Here, there was nothing "inadvertent" in Fuentes' failure to cite supporting documents and evidence.  And, of course, discovery has been closed for months.

---

[5]  Unless the Court prohibits Fuentes from relying on information that is not cited in his report.

13

Third, the court in *Thornton* refused to strike a "crucial" expert report that failed to comply with Rule 26's requirements of identifying previous testimony and cases.  Here, unlike *Thornton*, Fuentes is not "crucial to the Plaintiff's case."  (R&R at 27.)  If Fuentes is excluded, CEP's case may still be presented to the jury.  *Thornton* was a medical malpractice case in Georgia, a state which ***requires*** expert testimony to establish proximate cause in medical malpractice cases.  2013 U.S. Dist. LEXIS 15543, at *27-28.  Thus, excluding the Thornton expert was the equivalent of dismissing the case – not the same here.

Even if the Court agrees that excluding Fuentes is improper, Caterpillar respectfully requests the Court preclude Fuentes from testifying about documents not cited in his report or summary materials, tables, or calculations derived from such documents.

**B.   Judge Goodman Erred In Finding Fuentes' Report Admissible**

Judge Goodman recommended denying Caterpillar *Daubert* motion on the basis that an expert need not verify information fed to him by a party and Fuentes' reliance on speculative data, an improper discount rate, and other failures is best evaluated through cross-examination.  (R&R at 27-33.)  Caterpillar objects to this recommendation on the basis that it does not: (1) acknowledge the Court's affirmative gatekeeping function for expert testimony, (2) fully address a Southern District of Florida case in favor of non-binding, out-of-Circuit cases, and (3) overlooked several of Caterpillar's other arguments supporting exclusion.

**1.   The R&R Improperly Abdicates The Court's Gatekeeping Role**

The R&R is legally flawed in that it recommends that the Court abdicate its gatekeeping role for purported expert testimony *before* that testimony is presented to the jury.  Fuentes' opinions regarding supposed damages suffered by CEP should be excluded because they are unsupported and unverified.  In its briefing, Caterpillar presented the following reasons why Fuentes' opinions are flawed:

(1) Fuentes relied on documents prepared by CEP and did nothing to determine their accuracy (Mot. at 36);

(2) Fuentes' calculations relied on an improper best-case scenario of complete demand for CEP's energy output that resulted in inflated lost profits damages estimation (*Id*. at 37-39);

(3) Fuentes used an unsubstantiated discount factor (*Id*. at 39-40); and

(4) Fuentes failed to consider additional components of a valid damage analysis (*Id*. at 40).

In the R&R, Judge Goodman essentially concludes that, although Caterpillar identified serious flaws with Fuentes' opinions and report, these discrepancies are more appropriately raised before the jury. (R&R at 30 ("[a] party confronted with an expert accountant's damages opinion is, of course, free to challenge the accuracy, completeness and relevance of the material provided to the expert during cross-examination"), 32 ("the Undersigned need not now determine whether this aspect of Fuentes' conclusions is sufficiently reliable or whether it is unduly speculative.  The challenges can be adequately explored on cross-examination"), 33 ("the propriety of Fuentes' discount factor may be put to the test at trial"), 33 ("the issues are not appropriate for an all-or-nothing exclusion decision.  Instead, they are issues which can best be raised at trial through effective cross-examination.").)  However, it is the court's gatekeeper duty to preclude unreliable testimony *before* it is presented to the jury.  *McCorvey*, 298 F.3d at 1256 ("*Daubert* requires that trial courts act as "gatekeepers" to ensure that speculative, unreliable expert testimony does not reach the jury."); *Hughes*, 766 F.3d at 1328-29.  By allowing the testimony, the R&R creates the real possibility that the jury will be confused by Fuentes' unsound and unreliable expert testimony.

It was a clear error of law for the Court to recommend the admission of Fuentes' testimony. Fuentes' opinions should be excluded well before he can testify at trial, especially here where Fuentes' opinions are not cited with supporting documents, which would unfairly

hinder Caterpillar's cross-examination of Fuentes.    Without such supporting evidence, Caterpillar cannot verify the data and challenge any discrepancies in CEP's summary and, by extension, Fuentes' opinions. Accordingly, the proposed solution that Caterpillar discredit Fuentes' opinions in front of the jury erroneously presumes that Fuentes' opinions are based on actual evidence.   *Hughes*, 766 F.3d at 1331 ("The trial court's gatekeeping function requires more than simply taking the expert's word for it.") (quoting Fed. R. Evid. 702, advisory comm. note).

### 2.  The Court Relied On Out-of-Circuit Cases And Improperly Rejected Binding Case Law

Fuentes' report consists primarily of summary tables that compile factual data that were created by CEP.  During *Daubert* briefing, CEP conceded that Fuentes did nothing to verify the information fed to him by CEP.  (Opp. at 29-31.)  Another court in this district rejected this type of blind reliance by experts.  *See First Premium Servs., Inc. v. Best Western Int'l Inc.*, 2004 WL 7203535, at *1 (S.D. Fla. Jan. 8, 2004).  In *First Premium*, plaintiff attempted to introduce expert testimony of an accountant to prove lost profits.  *Id.*, at *1.  The court excluded the accountant's testimony on five independent bases: (1) he relied on documents prepared by the plaintiff and "did nothing to determine their accuracy," *id.* at *3; (2) his calculations included "rank speculation of a manufactured best case scenario," *id.*; (3) "in concluding that [plaintiff] would be profitable for fourteen years, he did not consult in the industry or use any objective measurement," *id.*; (4) "he used a discount factor which had no basis other than his opinion. [The expert] admitted that he used no specific scientific method to determine this discount, and that he consulted no standard in determining the discount, but instead came up with the discount just with my experience," *id*. at *4 (internal quotations omitted); and (5) the expert failed "to consider additional components of a valid damage analysis," *id*.  Each and every one of these

fatal flaws appears in Fuentes' testimony and report, and the Court should have reached the same result for any or all of the same reasons.

Judge Goodman distinguished *First Premium* because the expert in that case relied on financial documents the company's president admitted he could not guarantee were reliable. (R&R at 28.)   Judge Goodman's statement that "[t]o be sure, Fuentes did not verify that a particular sum of money was in fact paid" misses the point. (*Id.* at 29.)  Fuentes blindly relied on CEP's litigation created spreadsheets and did not even know what some of the numbers reflected.  (Mot. at 36-37 ("I am not quite sure of the total things that go into that."))  And, again, the Court should put Fuentes' testimony in context:  **the spreadsheets on which Fuentes claims to rely were not produced to Caterpillar until months after Fuentes submitted his report**. Fuentes' blind reliance is reason alone to exclude his testimony.

Judge Goodman neglected to take into account the second, third, fourth and fifth bases of the *First Premium* decision, which provided further support for excluding the testimony. The Court should follow the reasoned approach of its sister court in *First Premium* and exclude Fuentes' testimony.

### 3.   The R&R Did Not Acknowledge Caterpillar's Arguments

The R&R overlooks several of Caterpillar's arguments.   First, Fuentes admitted he merely took numbers from CEP and added them.  (Mot. at 36.)  CEP did not dispute this fact in its *Daubert* opposition, nor could it because Fuentes testified as follows:

> Q. So for the purposes of this analysis, you took invoices that you were provided and you added them up, right?…
>
> A. Yes, we did.").)

(Ex. 2, Fuentes Depo. at 183:11-18.)   Totaling up numbers is not something a jury needs an expert to do.  *Powell v. Carey Int'l Inc.*, 2007 WL 1068487, at *3 (S.D. Fla. Apr. 9, 2007)

(excluding expert where "his opinion does not apply accounting principles, other than basic mathematical functions" and testimony "is merely an arithmetic calculation that the jury can make with a calculator rather than requiring an expert accountant").

Second, Judge Goodman ignored that Fuentes did not even know what some of the information was that he regurgitated from CEP.  (Mot. at 36-37.)  Fuentes admitted as follows:

> Q. So I'm looking at the next column, the Operation Contract. What does that mean, "Operation Contract"?
>
> A. They had contract to, I ***think*** it's normal operation of machine, they spent costs involved in contract to maintain – ***I am not quite sure of the total things that go into that*** – that was – let me try and recall. Also levelized out. ***I'm trying to think of what he told me in terms of all of things that are in that component***. I'll have to give it some thought.
>
> Q. Who told you what was in that component?
>
> A. Again, that was a discussion with – with Mr. Amaral [CEP's 30(b)(6) witness on damages issues].
>
> Q. Did you look at any documents independently to verify what Mr. Amaral told you?
>
> A. No.

(Ex. 2, Fuentes Depo. at 84:7-25 (emphasis added) (objections omitted); *see also id.* at 47:5-19; 113:14-114:3.)  The R&R does not even acknowledge this testimony, nor did CEP attempt to rehabilitate it.  Rule 703 does not allow experts to act as the "mouthpiece of the witnesses on whose statements...the expert purports to base his opinion." *Loeffel Steel Prods. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 808 (N.D. Ill. 2005). Fuentes should be excluded.

<u>CONCLUSION</u>

For the foregoing reasons, the Court should reject Judge Goodman's Report and Recommendation (Dkt. No. 371) and grant Defendants' Motion to Exclude Henry Fuentes (Dkt. No. 300).

Dated: June 27, 2016

BAKER & HOSTETLER LLP

Robert G. Abrams
rabrams@bakerlaw.com
Gregory J. Commins, Jr.
gcommins@bakerlaw.com
Maria R. Coor
mcoor@bakerlaw.com
Shawnna M. Yashar
syashar@bakerlaw.com
Washington Square, Suite 1100
1050 Connecticut Avenue, NW
Washington, DC  20036-5304
Telephone:   202.861.1500
Facsimile:    202.861.1783


*Attorneys for Defendants,*
*CATERPILLAR INC.,*
*CATERPILLAR AMERICAS*
*SERVICES CO., and*
*CATERPILLAR AMERICAS CO.*

SEDGWICK LLP

By: */s/ Charles S. Davant*
Kimberly A. Cook
Florida Bar No. 014320
kimberly.cook@sedgwick.com
Ramon A. Abadin
Florida Bar No. 707988
ramon.abadin@sedgwicklaw.com
Charles S. Davant
Florida Bar No. 15178
charles.davant@sedgwicklaw.com
2 South Biscayne Blvd., Suite 1500
Miami, Florida 33131
Telephone:  305-670-4777
Facsimile: 305-670-4777

Sherylle A.O. Francis
Florida Bar No. 00761621
sherylle.francis@sedgwicklaw.com
2400 E. Commercial Blvd. Ste. 1100
Ft. Lauderdale, Florida 33308
Telephone:  954-958-2500
Facsimile:  954-958-2513

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on

June 27, 2016, on all counsel or parties of record on the Service List below.

/s/ Charles S. Davant
Charles S. Davant

## SERVICE LIST

| | |
|---|---|
| VENABLE LLP<br><br>*Patrick J. Boyle<br>pboyle@venable.com<br>*Jessie F. Beeber<br>jbeeber@venable.com<br>*Sarah S. Park<br>spark@venable.com<br>*Nicholas M. Buell<br>nbuell@venable.com<br>Rockefeller Center<br>1270 Avenue of the Americas, 27th floor<br>New York, New York 10020<br>Telephone: 212-307-5500<br>Facsimile. 212-307-5598<br><br>*Randall K. Miller<br>*Nicholas DePalma<br>8010 Towers Crescent Drive, Ste. 300<br>Tysons Corner, VA 22182<br>Telephone: 703-905-1449<br>Facsimile: 703-821-8949<br>rkmiller@venable.com<br>nmdepalma@venable.com<br><br>* *admitted pro hac vice*<br><br>*Counsel for Plaintiff* | HALL, LAMB, AND HALL, P.A.<br><br>Andrew C. Hall<br>Florida Bar No. 111480<br>andyhall@hlhlawfirm.com<br>Matthew P. Leto<br>Florida Bar No. 14504<br>mleto@hlhlawfir.com<br>2665 South Bayshore Drive<br>Penthouse One<br>Miami, Florida 33133<br>Telephone: 305-374-5033<br>Facsimile: 305-374-5030<br><br>*Local Counsel for Plaintiff* |